Beal *v.* Gordon.

## ABBY R. BEAL *versus* JAMES GORDON & *al.*

Prior to R. S. of 1841, actual, visible possession of land by a grantee thereof under his unrecorded deed, was constructive notice to all subsequent purchasers, equivalent to a registry of such deed; and this rule is still in force as to deeds made prior, even against conveyances made since those statutes went into effect.

What is sufficient evidence that land was conveyed by a deed never recorded, and subsequently lost.

Proof that the defendant in *trespass quare clausum,* and his predecessors in title, possessed, occupied and improved the land openly, notoriously and in a manner comporting with the ordinary management of a farm for more than twenty years, uninterrupted except by counter verbal assertion of title, constitutes sufficient evidence of such disseizin as will carry title.

In the description of land in a deed, monuments govern courses.

Repugnant calls in a deed may be rejected, when the remaining calls are sufficient and consistent with the intention of the parties to uphold the deed.

ON REPORT.

TRESPASS QUARE CLAUSUM.    Writ dated Aug. 26, 1865.

The remaining facts are sufficiently stated in the opinion. The Court with jury powers to render such judgment as the legal rights of the parties require.

*E. Kempton,* for the plaintiff.

No sufficient proof that the mutilated instrument lost was a deed. *Kimball* v. *Merrill,* 4 Maine, 368; *Emery* v. *Vinal,* 26 Maine, 295; *Dunlap* v. *Glidden,* 31 Maine, 510.

Deed from Walton to Fellows is certain and definite, and does not embrace the *locus in quo.* It cannot be explained by parol proof. *Linscott* v. *Fernald,* 5 Maine, 496; *Lincoln* v. *Avery,* 10 Maine, 418.

Plaintiff's recorded deed from Littlefield and Merryman is paramount. *Knox* v. *Silloway,* 10 Maine, 201; *Curtis* v. *Deering,* 12 Maine, 499.

Constructive notice was abrogated by R. S. of 1841. The grantee in a subsequent deed must now have actual notice of a prior deed. *Spofford* v. *Weston,* 29 Maine, 140; *Han-*

*ley* v. *Morse,* 32 Maine 287; ·*Richardson* v. *Smith,* 11 Allen, 134.

*S. Belcher,* for the defendants.

BARROWS, J. — The action is trespass *quare clausum,* and the *locus,* a piece of meadow land containing from three to five acres, being the easterly end of lot No. 18, according to Adams' plan of the Linscott purchase, in the town of Chesterville. The defendants justify under the inhabitants of Chesterville, who claim title to the premises. It is conceded that Joseph French owned the land in 1831, and conveyed this lot No. 18, with other lands, Dec. 3d, by deed of warranty recorded Dec. 16, 1831, to Ivory Littlefield and Timothy Merryman, under whom both parties claim. The plaintiff presents a quitclaim deed, executed by Littlefield and Merryman, dated March 12, 1855, and recorded Feb. 2, 1858, having been acknowledged by Merryman in Illinois, Nov. 16, 1857, releasing lot No. 18, containing 40 acres, more or less, in consideration of $25 paid by the plaintiff. The action is maintained, unless the defendants can show a better title in the inhabitants of Chesterville, whose servants they are.

On the part of the defendants, it appears that Abner T. Walton, in August, 1834, made a warranty deed to one Jonathan Fellows, (who is the father of the plaintiff, and her principal witness, and acted as her agent in the procurement of the quitclaim deed from Littlefield and Merryman, and in the prosecution of this suit,) of "a piece of land situated," &c., * * * * " being part of lot No. 18 of the Linscott purchase, and bounded as follows : — beginning at the north-east corner of said lot, thence westerly to the cedar land, thence southerly, by the edge of the cedar land, to the southerly line of said lot, thence westerly, on the lot line, to McGurdy's stream, thence northerly, on said stream, to the first mentioned bounds ; said piece of land to contain five acres, be the same more or less."

The statement of the course on the southerly line of the

lot, from the cedar land to McGurdy's stream, is manifestly erroneous, and must be rejected as repugnant to the remainder of the description, which contains sufficient that is intelligible and consistent to enable us to give effect to the evident intention of the parties.   McGurdy's stream, a natural monument forming the easterly boundary of the lot, must control the course erroneously laid down, in conformity with a familiar rule of construction.   Thus construed, the deed covers the meadow land in dispute and conveys whatever title Walton had to the same.   On the 6th of April, 1835, Jonathan Fellows made and duly acknowledged his deed of the same parcel, (correcting the previous erroneous description, and further describing it as "being the meadow land on lot No. 18,") to William Whittier, in consideration of fifty dollars, limiting his covenant of warranty, however, to those "claiming from or under" him.   Sept. 8, 1835, William Whittier quitclaimed the same, by deed, to Joseph Clough, who, on the 4th of October, 1836, quitclaims the same, by deed, to Lyman Whittier.   Neither of these deeds was placed on record prior to October 22, 1866, and, up to the time of Lyman Whittier's purchase, the land would seem to have been in an unimproved state.   But, in the spring of 1837, it appears that Whittier set to work upon it, — cut off the white maples and black cherry trees, cleared up and burned the brush, and thereafterwards cut the grass every year, thus having an open and visible possession of the parcel, and giving constructive notice to purchasers and all the world, of a change of title for four years prior to the time when the Revised Statutes of 1841 took effect, requiring actual notice of an unrecorded deed.   July 26, 1842, Whittier made a warranty deed of the premises to Stephen K. Couillard, who was then in possession under him, and this deed was duly recorded April 2, 1844.   Couillard continued in possession until May 18, 1848, when he made a warranty deed of the land to the town, (recorded May 19, 1848,) and thereafterwards the inhabitants of Chesterville, by their servants and agents, had uninterrupted

possession of the land, cutting the grass every year until 1863, when Jonathan Fellows, the plaintiff's agent, in the language of the witness, "dodged in ahead and cut the grass;" but the hay was damaged and not hauled away.

It appears, then, that the inhabitants of Chesterville and their predecessors and grantors, Whittier and Couillard, had possession, occupation and improvement, open, notorious and comporting with the ordinary management of a farm, for more than a quarter of a century prior to the commencement of this action, uninterrupted except by the verbal assertions of title in his daughter, made from time to time by Jonathan Fellows, which only serve to show the possession, which Whittier, Couillard and the town continued to maintain, all the more distinctly exclusive and adverse.

It appears that Jonathan Fellows, besides giving this deed of the meadow land in dispute, (which deed he now, in the capacity of agent for his daughter, seeks to avoid,) some seven years before procuring the quitclaim deed from Littlefield and Merryman to the plaintiff, gave a warranty deed to his daughter of the rest of lot No. 18, bounding the parcel thus conveyed " easterly by the easterly edge of the cedar swamp,"—so as not to include the meadow land which, as we have seen, he had previously deeded to Whittier. All the acts of possession done by the plaintiff, or under her authority, upon lot No. 18, after she received the deed from Littlefield and Merryman and prior to 1863, appear to have been done, not upon the meadow land, but upon the other and larger portion of the lot which Fellows testifies he had of his father, who had it of Walton.

Were it necessary for the town, in order to maintain their title and justify the defendants, their servants, to rely upon the doctrine of disseizin and adverse possession, they might safely do so upon the evidence here.

But they claim title under Littlefield and Merryman by deed prior to the release given to the plaintiff. The only link thus far wanting in their chain is the deed from Littlefield and Merryman to Walton. As to this, Jonathan Fel-

lows, the plaintiff's agent and witness, testifies as follows : — "I once had in my possession the remnants of a deed from Ivory Littlefield and Timothy Merryman, to A. T. Walton. The description was of the meadow land on lot No. 18. Littlefield's name could be read ; but there were no seals, — no witnesses, — no certificate of acknowledgment. They are all now burnt." And again, — "Prior to 1855, I heard, in Lowell, Mass., that there was no deed on record from Littlefield and Merryman to A. T. Walton, — searched the records and could find none, — then went to Massachusetts to see Walton to ascertain whether he ever had a deed. I took from Walton, then in his possession, the fragments of a deed, — no top nor bottom, — only the middle of a deed. Littlefield's name was on it. In the body was the description of the meadow, — carried the paper to Littlefield, — told him Walton had no deed, — none on record to Walton ; that I had given my daughter a warranty deed and wanted to uphold the title, — asked him to give another deed." Elsewhere he says, — "This remnant was on a printed blank. The names of Littlefield and Merryman were in the body of the deed, if it was a deed."

Ivory Littlefield testifies as follows : — "Timothy Merryman and myself gave a deed — a warranty — of the land in dispute, to Abner T. Walton, Oct. 3, 1832. This note was the consideration. He cut lumber on the land. At the time I gave quitclaim to Abby. R. Beals, (the plaintiff,) Fellows showed skeleton of a deed, — said it was not fit to be recorded ; said most of deed was lost. I saw my signature, — wanted me to deed to his daughter. He did not give up deed." There is no cross-examination of Littlefield, — nothing in the case tending to show that he was ignorant of the requisites to the due and legal execution of the deed, as to the making and contents of which he testifies so unequivocally ; and the whole evidence on this point, coming in part as it does from the plaintiff's agent and principal witness, leaves no room for doubt that the land in dispute was legally conveyed by Littlefield and Merryman to Walton, Oct. 3, 1832,

by a deed never recorded, existing only partially and in a fragmentary condition when it fell into the hands of the plaintiff's agent, and now wholly lost.

It is unnecessary to consider the effect, if any, of actual notice of its existence to the plaintiff's agent, not communicated to her.

The actual, visible possession of the land by Lyman Whittier for years previous to 1841, was constructive notice to all and sundry, equivalent to a registry of the unrecorded deeds under which the defendants justify, even as against the conveyance to the plaintiff, made since the passage of the statute requiring either registration or actual notice. *Hanley* v. *Morse*, 32 Maine, 287 ; *Clark* v. *Bosworth*, 51 Maine, 528.

The attempt of Jonathan Fellows to obtain a title to this land for his daughter, to the exclusion of his own grantees, cannot prevail. *Judgment for defendants.*

